Argument next in number 2011-1025, Furnace Brook v. Aeropostale. Mr. Somerfield, you may begin when you're ready. We're here to talk about the requirements of collateral estoppel, but really the central issue on appeal is one of fairness. As the Seventh Circuit noted in the Ovidia decision that we cite on page 11 of our brief, in circumstances involving res judicata, traditionally the courts have been receptive to claims of unfairness when the issue was not clearly relevant to the initial litigation and so the party being estopped had no incentive to vigorously litigate the question in the first instance. Can I, before we get into the details of the legal issues, can I ask you effectively the same question I think I asked either you or whoever was counsel the last time around, which is, are the accused products, in this case, online ordering websites, is that accurate? Yes, Your Honor. Using the internet, not using the traditional landline telephone type connections, right? That's correct, Your Honor. All right. That was true last time as well. It was, Your Honor. That was certainly the issue that this court addressed on appeal, but going back historically here, what the district court did was different than what this court did. The district court looked at the embodiments of the patent and said, here's a telephone, here's a telephone, here's a telephone. The claims are limited to telephones. You're talking about Judge Bryant back in the first instance. Correct. In the Overstock decision, that is what Judge Bryant did and it was that decision that engendered the appeal upon which the district court in this litigation relied in applying collateral estoppel. So what Judge Bryant effectively did was said, here are the embodiments. So the claims are reasonably limited to telephones. He never got down to a level of detail that said, how do these things communicate? You may be asking, I think the question that we're trying to get to here is, is this just a theoretical legal debate or is there going to be any evidence in the record that shows that there's a dial-up communication that reads on these claims? We are asserting equivalence, Your Honor, and if you turn to page A44 of the appendix, you'll see the declaration of Dr. Stevenson, which was actually filed in the litigation below here, that talks about the equivalence between internet connections and dial-up connections. So this is not an academic debate. There is actually evidence that we intend to present and would have presented, frankly, in the Overstock litigation had we known that the case was going to come down to how things communicate as opposed to what they are. Because as I mentioned, Judge Bryant said, I looked at the patent, everything talks about telephone terminals, so that's what the claims are going to be limited to, and I'm excluding per se personal computers and cellular telephones. I don't care how they connect. They aren't telephones. Do you think that you've been precluded from essentially developing a DOE case as opposed to a literal infringement case? That's correct, Your Honor. We didn't get the chance to put on any evidence about this because when the case came up to the Federal Circuit in Overstock, the Federal Circuit actually expressly said, we agree with Furnace-Brook that personal computers and cellular telephones can be telephone terminals as that term is used in the claim. However, and this is quoting from page 8-225 of the record, thus the claim won limitation reciting the establishment of a selective communication link initiated by a user between said user's telephone terminal and said computer system requires that the communication link be established over the telephone network by dialing the computer system directly. Which is to say that the telephone terminal requires a telephone connection, right? Well, there's a separate limitation, though, Your Honor, and that's It's all part of the same limitation, it's this three-line limitation, limitation number three. Now, there's a subset, I guess you could say, selective, but the quote you just read incorporates the telephone terminal and says that the telephone terminal means, as I understand the opinion, means that the communication has to occur in a traditional telephone communication over the telephone network, not over the internet. Yes, Judge, yes. It's the whole dispute. By the opinion, though, by the opinion, I assume you're referring to this Court's opinion, the Overstock case. Right, right, yeah. But the problem is that Judge Bryant and Overstock in the District Court didn't look at the entirety of the limitation. Overstock said, we don't have a telephone terminal because computers and cellular telephones are not telephone terminals. And Judge Bryant agreed. They didn't address any of the rest of that verbiage. That didn't come up until the appeal. And had we known that that was going to be the basis, certainly we would have put on evidence of the type that we provided in the case of Dr. Stephenson's declaration saying they're equivalent. So there is still the satisfaction of the remainder of that limitation because, to use your own terminology, Your Honor, it was a subset that Overstock and the District Court were focused upon, the subset being telephone terminal and only telephone terminal. And nowhere in the District Court decision does it say anything about how these things communicate. So is it your view that this Court on appeal construed a different term or did it construe telephone terminal to include a limitation? What is your argument about the change in claim construction that you think occurred here? So certainly on the face of it, we would contend that there was a different claim limitation that was invoked by this Court in finding no infringement or affirming the decision of no infringement. And I'm sure that the appellees in this case would say, no, no, no. It was all part of the telephone terminal discussion. But either way, either way, the reasoning of this Court was fundamentally different than what the District Court did. Because again, the District Court said, as a matter of fact, telephone terminals cannot include and do not include personal computers and cellular telephones because of all the examples in the patent that only refer to traditional telephones. It didn't say anything about the communication mechanism that these things may use. And again, just to highlight the fact that there was a fundamental change, at least in the reasoning underlying the affirmance, this Court expressly said, we agree with Furnace Telephone Terminals, i.e., we don't agree with the District Court that, as a per se matter of fact, these things can never satisfy this limitation. The problem, though, again, irrespective of how you characterize what the basis for affirmance was, we didn't have an opportunity to put in the evidence of how these things communicate, which it would be counterintuitive to say, yes, we understood that that was an issue and we just decided not to put in evidence because we didn't feel like it. We had the evidence and we could have had the evidence, but it was just because it wasn't the same issue on appeal that it was at the District Court. And obviously, we're not here challenging whether the earlier Overstock appeal decision was correct. That's fine. What we're saying is, though, that the appellees now can't say, well, shame on you for not putting in evidence somewhere on an issue that wasn't briefed by Overstock and wasn't decided by the District Judge. So there's no doubt that you are bound by this Court's claim construction. Yes, we are not challenging that. Your argument is simply that you did not have a full and fair opportunity to litigate that claim construction. The answer is yes, Your Honor, and more specifically, Dr. Stevenson's declaration uses this Court's claim construction of selective communication link and telephone terminal in his opinion regarding equivalence. So again, we are not urging that there be any change to anything that this Court did. We just want the opportunity to be allowed to put on evidence on an issue that we weren't allowed to do in Overstock. But if we see that there's no basis for arguing that the pure Internet connectivity is equivalent as a matter of law, then aren't you in the same position? I mean, forget the collateral estoppel. You know, if the argument you're making is so antithetical to the specifications repeated telephone, telephone, telephone, telephone, telephone verbiage, then at the end of the day you're in the same place. That would be true, Your Honor, except that what Dr. Stevenson is opining upon is equivalence, which is a highly intensive fact issue. So this Court would actually have to find a fact that wasn't found anywhere before that says that in fact, in the context of Claim 1 of the Patent and Suit, an Internet connection is not the equivalent of a traditional dial-up connection. Well, I mean, wouldn't it be vitiating a limitation? You'd be removing the word telephone. No, Your Honor, because as this Court said, a telephone terminal is in fact acting like a telephone terminal when it also satisfies the selective communication link. So if we have the equivalent of that. Whoa, what did you just say? That didn't sound right to me, but go ahead and say it again. This Court said what? When it can, well, the passage I just read, a telephone terminal is acting as a telephone terminal when it also has the selective communication link requirement, the very thing that you said before, Your Honor. It's part and parcel of the same limitation. And that's the language from page 225 of the record. Well, what we said was the selective communication in question is communication over a telephone terminal. Yes. Right? Over a telephone line, yes. Which means over a telephone line. Yes. It strikes me the only difference between what we said and what Judge Bryant said was the question of whether a cell phone, or under certain circumstances a computer, could serve as that telephone. If it's running over, if you use a cell phone over the telephone lines, that qualifies, right? Yes. If that's so, what's the difference in the equivalence argument that you made in this district court from the one that you made before Judge Bryant? Because now we're focusing upon the way that the devices communicate. We argued before Judge Bryant is... But in each case, you have to make the argument that the telephone-type devices are equivalent to the Internet. Whether those devices include cell phones or not. In the Overstock case, Your Honor? Yes. You had to make that... Actually, we didn't because that wasn't the issue on which Overstock moved. Overstock said, as a per se matter, we don't even care about how they communicate. You can plug a computer into a dial-up telephone line, which people do with a modem, but we don't care. A telephone... Because the embodiments in the patent are limited to traditional telephones now, the only teaching that's supported are traditional telephones. And so all the farther the district court got in Overstock was, is a computer a traditional telephone? And since the answer is no, there is no infringement. That was what the district court did. That was the only issue on summary judgment? The only issue on summary judgment, Your Honor. So essentially, because you don't have a hard landline, then if you don't have a hard landline, then you can't infringe? That's right, Your Honor. As a matter of fact, let me just read from what the district court in this case said, characterizing what happened in Overstock. Overstock.com moved for summary judgment of non-infringement based upon the absence in its accused websites of the telephone terminal limitation in Claims 1 through 4. Because the district court's construction excluded computers and cellular telephones, and because Overstock's websites could only be accessed by computers or cellular phones. Furnacebrook conceded there was no literal infringement. That was the basis that the district court found no infringement. Is your argument on appeal to us that we didn't decide the meaning of the word telephone terminals before? We decided the meaning of a different term or that you weren't given an opportunity to put on evidence last time, so you shouldn't be collateralizing. The latter point, Your Honor, that irrespective of how one would characterize what this court did, we say it's different than what the district court did and that we weren't able to put on evidence regarding the equivalence of how, whatever telephone terminal means, how they communicate with the website at the other end. So given how narrow the district court's original construction was, there was nothing you could argue as it related to this particular infringing device, allegedly infringing device, is that right? Other than exactly what we did, which yes, in fact, telephone terminals can be computers and cellular phones. And then once the construction is changed on appeal, it's your argument that essentially there should have been a remand to allow you an opportunity to address that construction? Or once this court focused upon a different part of that same limitation, i.e., selective communication. Like either way, the point is that the ultimate issue upon which this court affirmed, we never had an opportunity to present evidence on. I see I'm in my rebuttal time. I would like to reserve the rest for that, if I could, unless there are other questions or so. Thank you. Very well. We will hear from Mr. Bumahill. Good afternoon, Your Honor. If it pleases the Court, I'd like to direct your attention to Furnace Brooks' opening brief in the Overstock case. And I think that helps make clear that all these issues were before the Court and considered by this Court in Overstock, argued by Furnace Brooks. What page of the appendix? 197 and 198 of the appendix. At section A3A, it's right in the middle of the page on 197, section 3 is the proper construction of the disputed limitations of Claim 1 of the 832 patent, which is the claim we're talking about in this case. First section there is selective communication link. And in that first paragraph, Furnace Brooks acknowledges that the district court construed selective communication link and accepts that construction, waiving any arguments to it. And then in the second section, at the bottom of page 196, or 197 and the top of 198, the sentence that runs over reads, this interpretation, that being a telephone terminal, is consistent with the district court's construction of selective communication link, which requires a dial-up connection, et cetera. Right. But the district court construed selective communication link separately from telephone terminal. That's right. Right. And then the issue on summary judgment was just telephone terminal. That's right. But this shows that Furnace Brooks was cognizant that selective communication link provided context to the telephone terminal construction, which is how this court used selective communication link in its opinion. But you can see that the narrow basis that you moved for summary judgment in the first case was the telephone terminal. I mean, that was an easy call for you, that once the district judge had said, you basically got to have a traditional hard landline, you moved for summary judgment and said, that's the end of the inquiry, Judge, and the judge said yes, right? That's correct. So that's what was on appeal. That's correct. And I would submit that on appeal, this court didn't go beyond that. All it did was say the telephone terminal required a dial-up connection, but it didn't have to be a landline. It could be other devices that perform the dial-up functionality. But you would never move for summary judgment on that alternative construction, did you? No, because that was not the construction... Again, but you could have. You could have said, we moved for summary judgment on the telephone terminal limitation, and we also moved for summary judgment because we don't think you can satisfy the selective communication link, but you didn't move. No, we moved on telephone terminal. Well, Overstock moved on telephone terminal. Okay. And going back to the telephone terminal and selective communication link, it's easy to get focused on selective communication link and see it as being co-equal or even more important than telephone terminal. But I think that this court's Overstock decision made clear that telephone terminal was driving the decision before this court, before Judge Bryant and the Southern District of New York, and before Judge Kendall. This court's Overstock decision spends one sentence on selective communication link in the middle of its analysis of the telephone terminal construction. And what it really is doing is saying that it has to be dial-up. It provides, as Judge Kendall said in the district court opinion in the instant case, context for the telephone terminal construction. And so nothing was changed by this court's Overstock decision. Context meaning that essentially the selective communication link is read into the telephone terminal phrase. I wouldn't say that it's read in. I would say that it explains that telephone, it's further explanation for the fact that telephone terminal has to be a dial-up. And then you see that the Overstock decision from this court goes on to explain that there has to be a difference between terminal and telephone terminal. And that difference is this dial-up requirement. Did the lower court ever say it has to be dial-up or were they just, in Overstock, focused on telephone versus cell phone versus computer? The Overstock court said that it has to be dial-up. Let's see if I can find you a site for that. Just like this court did in the Overstock decision. This court was very clear that dial-up was required. Well, this court certainly was, but I'm wondering was the district court. I'm just wondering, did they have a fair shot at presenting their evidence below? Let me see if I can find you that quote. It was certainly argued and dealt with in terms of the claim construction of selective communication link. And Judge Bryant notes the selective communication link construction in his opinion. But admittedly, he was focused on the landline and does note that computers and cell phones do not, he goes on to say that internet was disclaimed by the patentee during prosecution history. So you'll concede that at least below, there was never any opportunity to put in evidence that if in fact cell phones or computers constituted telephone terminals, that they satisfied the selective communication link. Well, there was, not as to selective communication link. There was an opportunity in the doctrine of equivalence argument, which Furnace Brook didn't meet in the first Stevenson declaration before Judge Bryant. Meaning that they couldn't prove that the internet is the equivalent of a landline? That's right. And what was in that first declaration? Was it the same expert I didn't recall? Yes, I believe that it was. And I don't have that declaration before me. It's not in the record. We only have the second declaration, which presumably goes further and provides a detailed discussion of how you might interact between a computer terminal and internet service provider and a database on the other end and how it can be involved with the telephone line. So are you saying that the expert never offered any evidence of equivalence and so they had an opportunity to, but he put in his report and never did, so we shouldn't be concerned now about the fact that they are suggesting that it was unfair to them because they had the opportunity and chose not to? Is that your argument? That's correct. I don't understand your argument. That's correct. They had the opportunity. They submitted an expert report and they could have made whatever allegations they wanted on literal and DOE. This isn't an expert report in response to your summary judgment motion, is it? Or are you saying in the course of normal discovery they put on their expert, which would be for their facts that they intend to prove? Well, that declaration, I believe, was focused on summary judgment. However, they certainly had discovery to do. In this case, for example, Furnacebrook could have sought Rule 56-F discovery to put in additional information or could have submitted an affidavit to challenge the declaration, to challenge the declarations that Appellees provided explaining how their systems work and chose not to. Well, in the last case, didn't the district court hold that you could not, they could not prove the document of equivalence because of prosecution history estoppel? Yes, and they also... I'm just wondering what would have been the point of them putting in an affidavit by an expert saying the Internet is equivalent to a dial-up connection after the district court had already ruled on prosecution history estoppel? Well, I think that the district court rules all at once, so the issue is open when they put the declaration in. And so the point would have been to counter those issues. But the claim construction preceded the expert reports, right? I mean, that's how it works, right? You do a claim construction first and then your expert is tied to the court's claim construction. If the expert had tried to do a different claim construction, perhaps anticipating something else from this court, then the district judge would have said, sorry, it doesn't work, right? You can't go there. You're stuck with my claim construction. Perhaps. Again, I would say that this court's overstock case, again, focused on the telephone terminal, just like Judge Kendall's decision in the district court below in this case. Talk to me about the Seventh Circuit law. I mean, you are really in a circuit where estoppel is something that the Seventh Circuit says you have to be extraordinarily careful about applying. Isn't that right? That is correct. And I think that we have the cases here. Furnace Brook obviously litigated both cases. They had opportunities. They actually litigated telephone terminals decided on summary judgment. They actually litigated selective communication link as part of their claim construction. They argued it before this court in the overstock decision and accepted the district court's selective communication link construction. So they had opportunities. They chose to accept that portion of the case. And they noted that selective communication link's value was to provide context. Well, when you say accept that portion of the case, when you moved for summary judgment on one issue and one construction of one term, right? And that's what the district court granted summary judgment on. I mean, they couldn't have said we're going to address every other claim construction that the district court did. At that point, there was only one construction at issue. Perhaps, but they didn't have to concede to it in their appellate papers. They were making a statement that they accepted that construction. For purposes of that appeal. That's not what their papers say. Their papers just say they accepted it. Getting back to the Seventh Circuit's collateral estoppel law. Telephone terminal term really was what was central to the overstock decision before this court. And it was central to Judge Kendall in the court below here. That issue was fully litigated and it's identical. We have the same issue. We have the same types of systems. They're all an online ordering system. You have to be on the internet to access the appellate systems. And Furnace Brook never challenged that. The systems are, in all relevant parts, identical between overstock and appellate in this case. But they're saying that their expert's declaration gives them a shot at the doctrine of equivalence. What is your answer? I mean, I know we're getting ahead of ourselves here a bit. But what is your answer to the contention that the expert's affidavit would provide a sufficient basis for a ruling on the doctrine of equivalence? We do have a copy of the current expert's. Yeah, I'm reading from it. I don't know how different that is from the previous one. I wasn't able to find the previous one in the court records. But we don't have the appendix that was filed in the other case. I don't have the original in front of me either, Judge Bryson. But it is, based upon memory, provides some additional technical arguments. It's still, the declaration doesn't touch on any of the... But, I'm sorry, I meant to direct your attention to the current declaration. And what is your argument as to why that declaration does not provide a sufficient basis on which the district court could find infringement under the doctrine of equivalence?  First of all, there's no challenge to, in the Stevenson Declaration or elsewhere from Furnace Brook, to the declarations regarding appellees' systems, which require an internet connection. I think that's, everybody seems to agree that that is true. Next, the use of the internet was disclaimed by the patentee. So, there's prosecution history estoppel that never allows us to get to that. And, in this court's construction, in Overstock, telephone terminal was held, it was held that it needed to be different than terminal. And the difference was that dial-up connection. And the internet simply isn't that dial-up connection directly to... Isn't that the question of equivalence? I mean, that's what, as I understand it, Dr. Stevenson is saying is not true. I don't think he would agree with you, if I understand this. Right? Yeah, I think that's right. There's a saying, it's just a trivial matter between the two. Well, and your response to that is... It's not a trivial matter. Okay. Well, there you are. Why is it not a trivial matter? It's not a trivial matter because the mode of communication is significant here. The dial-up connection directly to that database is very different than an internet connection, which is not just a different... And I see that I'm over my time. Go ahead. It's not just a different way to reach out to that database, but it's a completely separate means of communication, allowing different types and amounts of data to be exchanged. Okay. Thank you, guys. Let's see. Counsel, do you have the district court's opinion handy at A5 in your appendix? Yes, Your Honor. Okay, the second full paragraph. The district court also granted summary judgment of non-infringement under the Doctrine of Equivalence for Claims 1 to 4. Ernest Brooke argued and presented evidence to the district court that a computer and a cellular telephone are equivalent to a telephone terminal, as the district court had construed that term. Nevertheless, the district court concluded prosecution history is tough. So, at least from this, it appears as though you had an opportunity and did, in fact, present evidence of equivalence in the Overstock case. On the devices themselves, as opposed to how they communicate. In other words, for purposes of this invention and the user interface, the input devices, for example, the way someone would enter an order on a computer versus a cellular telephone were equivalent. But not how that then is translated down the communication link. Ernest Brooke argued and presented evidence that a computer and a cellular telephone are equivalent to a telephone terminal, as the district court had construed that term. Right. Because, again, what the district court did was said a telephone terminal is a traditional telephone. That excludes, per se, a computer terminal and a cellular phone. What we said was the devices themselves are equivalent one to another. But that had nothing to do with whether they form a dial-up connection or something equivalent thereto to the... It had nothing to do with. Because if he's going to say only a telephone terminal is going to be good, then you're going to say, no, look, the computer is equivalent to a telephone terminal. And you're going to look at function, way, result. That's right. Necessarily, the function and the result prong are going to include the dial-up connection feature. Necessarily, they have to. Not necessarily, Your Honor. Because that's the function. But then isn't it your fault that they didn't? No, Your Honor, because selective communication link is a separate limitation. And to say that somehow the satisfaction... Okay, that's fine. So if I decide that our court did not decide selective communication link but rather decided the meaning of telephone terminal, then you're done. No, Your Honor. Again, because what happened was this court basically made a finding fundamentally different than what the district court made, i.e., that a cellular telephone and a personal computer can be a telephone terminal. The district court said, no, they can't. And that was the only thing we were addressing in the Overstock case. The DOE finding by the district court was based on the fact that the district court said that you clearly disclaimed anything other than telephone terminal. And so by definition, since the district court felt that telephone terminal had to be a landline, essentially, a traditional telephone terminal, that there could be no equivalence as to telephone terminal. Because he automatically excluded, it doesn't matter how they connected, he automatically excluded personal computers and cellular telephones. Counsel, what Judge O'Malley just quoted or explained was his decision on summary judgment. But what I'm referring to is until he made that decision, you were putting on evidence of equivalence of this very thing, the equivalence of a computer, Internet connection, a computer, a cell phone, and a telephone. Until he made the subsequent finding that Judge O'Malley is pointing to, you had an opportunity and did put on evidence of equivalence. And so for you to prevail on your collateral estoppel shouldn't apply theory, as I understand it, you've kind of hinged that on it's unfair to us to be held to this court because we didn't have an opportunity. Well, not only did you have the opportunity, I see here that you did present this evidence. And in fact, then we have to go one step further back historically to what Overstock actually moved on. And Overstock essentially moved on the very ground that Judge Bryant found no infringement. That because of the way the specification is written, because of the specific embodiments, because the patentee used computer when he meant computer, and telephone terminal doesn't use that term, for all of those reasons, they didn't have a telephone terminal. They never said anything in their summary judgment motion about the way these things connect. And as this court has admonished over and over again, it is not appropriate to fill the record with essentially irrelevant stuff. And if we were to have done that, basically we could have been accused by Overstock of seeding the record with a bunch of evidence that had absolutely nothing to do with the one issue that Overstock moved on. Which was, given the way the specification is written, can a telephone terminal be anything other than a traditional telephone? And by the way, with Dr. Stevenson's declaration, it was a declaration, it wasn't an expert report, and again, his declaration was tailored to answer the one very narrow issue that Overstock moved on. You're talking about the one before Judge Bryant? The original one, the Overstock one that isn't in the record. And if there are no further questions. Thank you. Thank you both. Counsel, the case is submitted. All rise.